I understand we're going to hear from Ms. Brogan first, on behalf of the Schnells. By the way, I take it by now you've been in the courtroom. The lighting system, if you've not argued here before, the green light will go on when you begin. The yellow light will be a warning that you've got two minutes remaining, and then when the red light comes, we ask that you please conclude your sentence and have a seat, unless there's a question from the court at the time, in which case we'll give you the chance to answer. Understood. Well, good morning, and thank you, Your Honors, and may it please the court. The matter before us is an insurance cover dispute between Carl and Mary Ellen Schnell and their insurance carrier. This story begins in September of 2017, when Carl and Mary Ellen Schnell filed a claim with State Farm for damages to their home incurred during a wind and hail storm. On October 5th, 2017, State Farm estimated that Schnell's storm related damages to be approximately $5,100. Thereafter the parties engaged in appraisal proceedings and ultimately executed an agreed appraisal award on March 3rd, 2020. The appraisal award separates the plaintiff's losses into building damages of approximately $32,000, building damages being physical damages to the home due to wind or hail, and then a separate category of, quote, building code damages of approximately $166,000, and building code damages would be increased construction costs related to building code enforcement. Notably, the award for building damages alone was more than six times State Farm's initial estimate. The bifurcation of the appraisal award into building and building code damages reflected the reasonable probability that the Schnell's would encounter difficulty obtaining approval from local authorities to perform limited repairs on the roof because the Schnell's existing Monier roof tiles were obsolete, and an ITIL tile compatibility report indicated that no currently available manufactured tiles were fully compatible with Monier tiles. Therefore, the, quote, building code portion of the appraisal award anticipated the Schnell's ordinance and law writer should local authorities mandate that the roof be fully replaced with uniform tiles instead of spot repaired with two different brands of tile. Attached to the appraisal award was an estimate that the umpire solicited from local roofer Brett Hall to evaluate the cost of repairing the Schnell's roof with a similar line of tiles manufactured by Boral, if permitted by local authorities. Also attached to the appraisal award was a letter from the Schnell's homeowners association stating that use of Boral tiles to repair the Schnell's existing Monier tiled roof would violate the Schnell's deed restrictions because the two lines of tile did not match in color or texture. Upon release of the appraisal award, State Farm rendered an additional payment of approximately $2,100 for the physical damage to the Schnell's home in accordance with the, quote, building damages portion of the appraisal award. However, State Farm withheld payment for the portion of the appraisal award specific to building code damages. I think we get the facts from the briefing. If maybe we can just jump ahead. Regarding your chapter 541 claim, you referenced some arguments that were made in the district court pleadings. I think that's at page 19 of your brief. What evidence of misrepresentations do you identify in your brief on appeal? When you argue on appeal, you have to point to some evidence that would illustrate that the district court erred. Well, I guess I was getting there. Maybe I'll need to get there a little quicker. I was continuing with this timeline. Once the Schnell's were denied coverage, the State Farm told them to go get a letter from your city official. The Schnell's went and got a letter from their city official. They turned that letter over to State Farm. State Farm called the city official. The city official confirmed that they were enforcing this code permit. They were requiring them to fully replace the roof if boral tiles were being used. At that point, with that in hand, State Farm wrote into their claim notes, we think ordinance and law coverage is here. They went to the manager. The manager said, no. We're not going to approve coverage even though you think it is. The manager said, go call Brett Hall, a local contractor. During a hall with Brett Hall, Brett Hall says, don't worry. You know what? Monier and boral tiles are the same. I'll just go ahead and do it for boral tiles. Based on that call with Brett Hall, State Farm denied coverage to the Schnell's with direct reference saying that they found someone who's a manufacturer who could provide Monier tiles, matching existing tiles, not the tiles, boral tiles that Brett Hall, the author of the estimate, was proposing to use. They absolutely misrepresented in discovery responses to the city of Fort Worth, to the Texas Department of Insurance, that Mr. Hall was somebody who could provide Monier tiles. Mr. Hall was merely someone who was willing to perform the estimate that State Farm had performed in violation of the city's opinion. Council, one fact question. Has your client ever requested or has State Farm ever offered to supply Monier, I'm not sure if I'm saying it correctly, the tiles that are on the roof as the replacements instead of this whole injection of the non-interlocking boral tile? Tiles are obsolete. So they're no longer ... Because there are none. Okay, so that's why we're talking about it. What's a little bit maybe confusing is there was a Monier line of tiles. It was bought by boral. It was a joint venture. Boral bought it out. Boral no longer services the Monier line. What State Farm is trying to force is for people with Monier tiles to use boral tiles anyway, even though the city has rejected that. It specifically rejected the estimate that they are promoting, that they paid for, the repair estimate, and they've confirmed that. The city has made a formal determination ... Yes, and they provide an affidavit. I can read you specifically the language of the affidavit. Okay, if you send it to the record, we can take a look at it. As I understand your argument, that that's the end of the insured's obligation. At that point, the coverage kicks in. That is our position, is that once they provided a letter from the city, a code determination from the city that was presented and confirmed by State Farm, the Schnells had complied with their obligations. That's like a prima facie case of coverage. Do I also understand that any dispute would be between State Farm and the city? Is that what you're arguing as well? Well, I would say State Farm basically just disregarded what the city said and found a different opinion that it liked better, and then denied coverage based on that opinion. I wouldn't say State Farm got in an argument with the city. State Farm misled the city into saying that the person that they found was able to supply the tiles that the city was mandating. Okay. Okay. That's your argument. So, I guess just with the last couple seconds that I have, I think that we've mentioned it in our briefing, but juxtaposition of this case to Tony, to Tony versus State Farm is really instructive. You know, in that case, the insured shows up with a contractor who says, it's my experience in the field that this is being enforced, and State Farm said, nope, nope, an enforcement action has to come from the city, and the contractor's not competent to give information about whether something's being enforced. In this case... Okay. Thank you, counsel. Your time has expired. We're going to hear from Mr. Hernandez. Good morning, and may it please the Court. I want to start by addressing two questions that you presented, Judge Englehart. First, with regards to misrepresentations under Chapter 541. The misrepresentations exist both in the underpayment of the initial claim, and then also in the assertions that the borough tiles were acceptable by the city. It's important to remember that State Farm did not make an initial payment under this claim. They estimated the damages at $5,000 some odd dollars, which was below the deductible. Following appraisal, that amount was determined to be $30 some odd thousand dollars. That's a misrepresentation in and of itself. But more importantly, and I think this is what we're getting at the root of here, is that the borough tiles that were proposed by State Farm, borough itself said they were incompatible. The manufacturer said they were incompatible, and State Farm said, we don't care. It took five years after the actual claim began before they brought an expert out to inspect and determine whether or not they were compatible. This goes to the second question that you raised, whether or not this is a dispute between State Farm and the city. To a certain extent, it is. State Farm had every opportunity it wanted to interject itself into the process and provide the experts, provide the engineers to say that these tiles were compatible. They had the opportunity to join State Farm in this litigation. They didn't do that. The decision that was rendered by the district court is not binding on the city of Fort Worth. Think about that for a moment. Now, the homeowners, the Schnells, may be forced to do a $160,000 roof replacement without insurance because the city of Fort Worth was not joined as a party in this litigation when State Farm could have made that option, could have brought them in. They didn't. The circuit court issued a binding decision on the Schnells that does not bind the enforcement authority. So I want to get to my main points, why I'm up here, and I think this is frankly a pretty simple case. There's two issues, the underpayment of the initial claim and the code enforcement issue. Now, as I mentioned, the original estimate was $4,000. The appraisal determined that the loss was somewhere between $30,000 and $160,000. The district court failed to really acknowledge or address this discrepancy. That's a minimum of six times an underpayment by State Farm and as much as 32 times. Now, the district court mentions that payment was made in 2020. Well, the claim was filed in 2017. That's three years of a 6X underpayment. You don't need an award above the appraisal award to get bad faith. Chapter 541 and Chapter 542 provide penalties, bad faith penalties, for untimely payments. There's no need for an expert on all these, and I want to address just briefly the mention in State Farm's brief that they never accepted the claim for the appraisal award. They assert that because they included some disclaimer with their payment that they're somehow not liable. But let's be real here. Insurance companies don't make insurance payments out of the goodness of their heart. They make the payments because they know they owe them. And all the Schnells need to do, they don't need an expert for this, all they need to do is show up and this is what happened after the hailstorm. No experts needed for that. Now, I want to get into the policy of the code enforcement and the decision made by the city of Fort Worth and the particular absurdity of the district court's decision. I don't think anybody here is going to dispute that an enforcement decision was made. I think what the question is is whether or not that enforcement decision was later rescinded based off of new information. Now, State Farm seems to focus on the letter by Evan Roberts that says, if the tiles do not interlock, then it's not compatible. But what they failed to acknowledge is that in that exact same letter, there's a because. Evan Roberts says, because they do not interlock, we are denying your permit. So the if that is focused on by State Farm is the question presented and Evan Roberts provides the answer. That's a determination. And the Schnells have nothing else to go on but that determination. Unless, there's nothing within the insurance contract that requires insurance to engage engineers and experts and all of that in order to deal with their local code enforcement officials. Now, whether or not the city of Fort Worth's decision was proper, whether or not it was a correct one, that's to be determined, but that's not the burden of the insureds. You have to remember that the insurance policy, every part of the policy is supposed to, any ambiguity enters to the benefit of the insured, not the insurance company. They did what they were supposed to do in accordance with Tony. The practical effect of this decision is to render code and ordinance meaningless. Because if at the end of the day, the insurance company can show up four years down the line and find some expert that says, you know what, we found a way to comply with the local ordinance. That's where we're at. So, I see I still have time if you have any questions. Questions? Thank you, counsel. Thank you. Let's hear from Ms. Lorber on behalf of State Farm. May it please the court. I agree this is actually a very simple case. The district court correctly granted summary judgment because the Schnells simply do not have the evidence necessary to prove their claims, neither in their response to the summary judgment motions, in their own summary judgment motions, or in their trial witnesses and trial exhibits. The summary judgment was one week before trial. This case was set. There was no changing the witnesses, changing the evidence. First, the Schnells cannot prove they are entitled to any benefits under the policy because their initial burden is they have to prove that the damage to their roof tiles were caused by a covered peril, hail. They cannot do that. They have no expert designated at all in this case, and no expert witness, no witness expert or otherwise, who testified in response to the summary judgment that any damage to the roof tiles was caused by hail. I don't understand that at all. I mean, you paid the 30 some odd thousand because your policy that you wrote and had approved by TDI provides this umpire provision. They complied with it. They had the two independent appraisals and the umpire. So the idea that it's not covered, that seems like, maybe we should move on to the other arguments, because that one's not going to work at all. Let me respond to that quickly, Your Honor. So the Texas Supreme Court has addressed this exact issue in three cases, starting with Barber Technologies, Ortiz, and Hinojos, and those are all versus State Farm, and they were all my cases. And I can talk about them for a long time, but the bottom line is that Barber Technologies, the Supreme Court said payment of the appraisal or neither the award itself or payment of the award is acceptance of the liability of the claim. The insured, after Barber Technologies, after Hinojos, the insured still has the burden to prove coverage for the claim. Is your view that you get the $30,000 back? No, Your Honor. Our view is if they want more, if they want prompt payment interest, prompt payment attorney's fees, then they have to do exactly what, I mean, this is the same fact scenario as in Barber Technologies, Hinojos, and Ortiz. And in those cases, the Supreme Court said, yeah, it's not as a matter of law that they didn't get prompt payment, but it's also not as a matter of law that they do. They still have to prove coverage for this claim. So you're not talking, you're talking about issue two right now, you're not talking about the breach of contract problem. Well, let me circle that loop for you, Your Honor. So the building code damages that have not been paid, and what this case is primarily about, also expressly says in the contract that the building code provision only applies when the dwelling is damaged by a loss insured. So they- What does State Farm think the tiles got damaged? What happened? Was it like- So, Your Honor, you'll see- Meteor or something, or- Meteor strike. Wear and tear, Your Honor. There's very little damage to the tiles. You'll see numerous photos from both sides in the record, and there's very little chips on corners. And so there's not evidence from anybody that hail caused it. The plaintiffs are not, they said, we're not going to testify to that ourselves, and they don't have any expert in State Farms. Witnesses all say, no hail, not hail, wear and tear, and that's from the very beginning of this case. So that's only the first burden that they have to prove for the ordinance and law. They also have to prove that the city is requiring replacement of the roof under an ordinance or a law. That's the one I want to talk about, because I've got the declaration in front of me, and I don't get it. Thank you, Your Honor. You specifically asked- He's asking a question. I'm sorry, I didn't mean to interrupt you. I do not understand your brief at all, and let me walk through why this is so confusing to me. I am reading the declaration from Evan Roberts, right? This appears at page, what is it, 24143 of the record. And it literally says, I made the determination, permit denied. Attached to the declaration is an exhibit from the manufacturer, the sales director, of the people that make the tiles. Like, what in the world evidence could they possibly want or get that would be better than literally the person that you say makes the tiles? And that person says, the tiles don't interlock. Then they attach that to a declaration from the city and says, denied. Like, I used to be a trial lawyer, right, I've been in this situation. We see a lot of cases, and often some of the questions that we ask at argument are, what more would they need to do? If I was sitting in a conference room, and I was doing an insurance claim case, and I said to my client, the platonic form of evidence, like literally the best thing that could ever get us in this case, would be an email from the sales director of the manufacturer of the tiles, attached to a declaration filed under penalty of perjury by the city of Fort Worth. And then State Farm comes in and says, no denial? I mean, talk about blinking reality. It's really hard. So, your honor, there's a lot of things I need to address in response to that, including what the record actually shows. Very early in the case, a Burrell representative who has not seen this roof and has not seen the tiles that are available for this, to answer the question you asked right off the bat, State Farm bought tiles for them that interlock with their roof. There was an inspection in the case where four experts, including their own roofer, went out, put the roof tiles on the roof, and said, you're right, these roof tiles match. Their own roofer said these roof tiles interlock, they match, there is no code compliance problem from their own roofer, and that's in the summary judgment record. So what Mr. Evans, Mr. Evan Roberts at the city said is, if they don't interlock, then there is a code compliance problem because the water would not be able to come out. He said, he signed an affidavit that's in the summary judgment record that says if they do interlock, there is no code compliance problem. And he said, I haven't been out there, I haven't looked at it, I don't know if they interlock or not. So it's if. And the fact determination of if they interlock or not was their burden of proof. They have to prove this coverage. And every single witness- They have to prove that the city has determined a code violation. Once they do that, the factual dispute, tell me where I'm wrong, the factual dispute about whether they do or don't interlock is really for State Farm to contest because State Farm gets the benefit of paying less if State Farm is able to convince a judge or the city or the insured that they interlock, end of coverage. But the dispute is really between the city and State Farm. The insured only has to come forward with evidence that the city has proclaimed the code enforcement decision will be X. So, Your Honor, two responses, one being I want to discuss the Tony case from this court and what it actually held. And I also want to say State Farm did put on conclusive evidence that there are titles available that interlock. So there's no fact dispute here, whether it's State Farm's burden, which I dispute. Maybe you're misunderstanding the question. It's not State Farm's decision as to whether or not they interact. It's the city's decision as a matter of code enforcement. Once the insured gets the decision from the city, it goes back to State Farm and says, we want coverage. If State Farm says, no, the city's wrong, then State Farm takes it up with the city to try to get some sort of either a waiver or convince the city that the decision was incorrect. State Farm did, Your Honor. So the final, so what the Tony case says is we're going to look at, let's set aside because it's not until step two or step two and a half what the city decided. Tony said, this court looks at what the code actually requires. Then it looks at what did the city say the code requires. And it said even assuming the city could do something other than what the code actually required, it didn't in this case. So we look at the code first, and then we look at what the city required. And the city, maybe Posen Counsel was correct when he said the city's enforcement decision changed over time. It started by relying on third hand information from a borough representative who did not provide summary judgment evidence and is not a trial witness. And they said, okay. And then State Farm came, had communications with them. And the final determination by Mr. Roberts with the city was his affidavit in this case. It said, if they don't interlock, if they do interlock. So his decision is, I don't know. His decision is, it's up to you guys to decide whether they interlock or not. It's up for the court. Counsel, I have the exact question that Judge Engelhardt has. I'm looking at the declaration. He doesn't say, I don't know. He says, permit denied. You need to look at his later declaration. Which date is the one? Shortly before, filed at the end of the case while the case was on summary judgment. I'm looking at March 18, 2022. It was probably after that. State Farm requested and was granted permission to supplement the summary judgment record. And that's the affidavit that was referred to by the district court. Do you have a record site? What's that? Do you have a record site? I know we cited it in our brief. I do not have it up here with me. It's almost at the very end of the record. When Mr. Roberts says denied, every Texan has some gripe with their city or county. And we all think, well, they should have done this and they should have done that. And if they had only considered this holistically, right? We all have these issues. But once he says denied, you have a complaint with Mr. Roberts. You don't have a complaint with the Schnells anymore. Which State Farm worked out with Mr. Roberts and he came to the conclusion that the city was not enforcing requiring replacement of the roof if the tiles interlock. That was the enforcement decision at the time of the summary judgment. And that's the only evidence in the record is that Mr. Evan Roberts said, if they interlock, our decision is this. If they don't interlock, our decision is this. That was the code enforcement decision. Maybe the easier way to ask it is this. We're here on a motion for summary judgment, right? Yes. So the question is, is there a genuine dispute of material fact? And how can there possibly, the way you just phrased your answer to my question and the way I understood your answers to Judge Inglehart, which are exactly the same ones I'm trying to ask you, is if this, if that, I don't know. Well, we created a system in this country for I don't know, and it's called the jury. And so the entire point of summary judgment is to say there's no evidence. And you literally just said, if this, if that. If this, if that, the if being, do the tiles interlock? And the only evidence in this record, they have never and will not be able to cite to any evidence in this record, in the summary judgment record, or in the trial witness list, in the trial exhibit list, that says these tiles do not interlock. Except for the sales director of the company that makes them. Who did not provide any sworn evidence in this case. It was third hand information provided. There's no, they did not put that person on as a signed affidavit, as a deposition testimony. They did not put that in the summary judgment evidence. And they do not have that person as a trial witness. Well, of course, they don't need to prove that the tiles don't interlock. They just need to prove that the city denied, that they have- They need to raise a fact issue to show if they fit within the determination by the city, that they need a roof replacement. Did you notice his deposition? No, he's not listed as a trial witness, so he can't testify at trial, so we would not- Sorry, I'm asking you a different question. Did you notice his deposition? Did you try to depose him? No, because the city had moved on well past that, by that point. The city and tiles had been found that fit on the roof, and everyone, including their roofer, admit to the tiles interlock that fit on the roof. And it was their burden to put on evidence that that was wrong, to create a scintilla of dispute in the summary judgment record, and they did not do so. And if the court is going to follow Tony, then this is very simple. What did the code require, and did the city require something different? And it sounds like perhaps we're not following the Tony case, but that's what Tony held, is you look at two steps, and in this case, the code only required that the roof be able to interconnect. And that's not what was held here. So I also want to ask, respond to what misrepresentations were identified. There's none identified in the brief. I don't believe there were any identified here today other than alleged misrepresentations during the claims handling. And there's numerous cases cited in our brief and cited in the district court's opinion that say post-claims handling, post-loss misrepresentations are not actionable. And so that would be something there. So all of the claims in this case rise or fall under whether they can prove they're entitled to additional policy benefits. Because additional policy benefits are the only damages they've alleged. They have not alleged any damages for an independent injury. So if they are not entitled to building code damages, like when you look closely at the evidence, you'll see they just simply did not prove their entitlement to that. And if you read Mr. Robert's second affidavit, you will see what his actual code determination was. And then, even on the prompt payment of claims act, they're claiming we didn't pay interest on the initial payment of the appraisal award. And that was actually covered exactly by Barbara Technologies and Ortiz. And Hinojos, after that, saying if they want to prove that, they still have to prove that what we paid for in the appraisal award was covered under the policy, and that goes back to whether it was damaged by hail. And so they have that burden, and they have no one here, expert or themselves. They disavowed that they were going to testify to that themselves. And they did not have an expert for that, so they can't get prompt payment interest on that piece. And also, their bad faith claims, again, are addressed by Ortiz. Because, and addressed by this court in Randall, where the court said, bad faith claims that are only for policy benefits rise or fall with the contract. So, if the summary judgment record demonstrates, as I believe it will, when you look closely at it, that they are not entitled to those benefits. They're also not entitled to recover on their statutory and common law bad faith claims. Let's see, what else? So, like I said, also, there seems to be a confusion about whether the city denied a permit. The city actually issued a permit, and after their initial discussion with the city about the roof tiles matching, they asked the city to withdraw the permit. This wasn't a situation where the city denied a permit, and Mr. Evan Roberts says in his last declaration, if these tiles match, if the tiles that you guys have that everybody says match, including their own expert, if they interlock, then they don't need a permit, they can repair the roof. So, there's several factual statements like that that were set at oral argument, that if you look closely at the record, you will see that that's not supported by the record. And I guess I'll give the court back some time, unless you have any additional questions. Questions? Okay, thank you, counsel. There's five minutes of rebuttal. Thank you, may it please the court. I want to bring attention back to whether or not an expert is actually needed to determine whether or not hail caused damage to this roof. And there's an analogy that I like to use. If I were to borrow your car, your brand new car, and I brought it back, and there was a big old dent on the bumper, one can assume that I hit something. Same thing here. There was observable damages to the property that did not exist before a hail storm. It really does not require an expert to determine whether or not the hail caused the damages. Plain and simple, the tiles themselves were a 50 year roof tile. And even their own expert says that it's wind damage to the tile. Joe Hall Roofing, in their estimate, claims that the front rake was damaged from wind. Now, they keep going back to the determination by the city of Fort Worth to say that it wasn't a final determination. And perhaps it wasn't, because two and a half years after the fact, he changed his position. But they rely on this if language. And again, that's the question presented. If they don't interlock, and the information provided to them from the sales rep of the company says they don't. He makes a determination of because. The later declaration that your opponent referenced is post-filing of litigation? Yes, yeah. So, what we're looking at is a declaration that existed two and a half years after the original determination. It's unsworn. I was able to find it, and I'm looking at it. What is the provenance of this? Where did it come from? Did State Farm get it from Mr. Roberts? State Farm produced it in their discovery. I do not know where it originated from. I'm assuming from Evan Roberts, but yeah. But he wasn't a witness, he was deposed? No, he was not, no. We just had his affidavit, which frankly we felt was sufficient. The sworn affidavit of Evan Roberts, the original one, saying that there was a co-determination made, that's undisputed. That should be the end of it. I mean, at what point does the insured meet their burden? We're two years after the fact, and they bring in, they could have brought in the engineers. They could have brought in experts beforehand. They could have tried to verify whether or not there was a compatible tile. And frankly, I don't know that there was a compatible tile at the time, or if it was something that they started manufacturing after the fact. I mean, at the time, the city determined through its communications with Mooneer, or with Borel, that there was nothing that was compatible. Since we're going to parse this unsworn declaration that Mr. Roberts apparently filed after litigation was commenced, the full sentence is, if the replacement tiles interlock in accordance with the manufacturer's, there's a typo, but I think he means with the manufacturer's installation instructions, with the original tiles on the roof, there's no permit need. Is there anything with respect to the manufacturer's installation instructions that differs from the sales director's email that we got at the beginning before the suit was filed that says they just don't interlock? Well, so the manufacturer's out of business. So to make them interlock in accordance with the manufacturer's instructions would not be possible because the manufacturer went out of business and got bought up by Borel. Other than that, they do not advertise anything that says that they interlock. The sales rep's position is the same as the manufacturer's. Now, real quick, before I run out of time, with regards to misrepresentations, state farms actually communicated to the Schnells that we have followed up with the roofing contractor that says the same tile is available and can be completed on the insured's roof. The same tile wasn't available. Now, a newly manufactured version may have been out there. They never provided actual information of the existence of the same tile being there, probably because the company was out of business. So that's a clear misrepresentation. And then I finally just want to follow up with that State Farm didn't bother to take this up with the city. The insured shouldn't be put in a position where they're forced to litigate against the city before they can litigate against their insurer. Let's just- Okay, thank you, Counsel. Thank you. Thank you all for your arguments. Well, we have your arguments and the case will be considered submitted. This court will adjourn. This is the final oral argument for this panel. So the court will adjourn at this time.